IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Case No.:

GS HOLISTIC, LLC,

        Plaintiff,

v.                                 **DEMAND FOR JURY TRIAL**

AMSTERDAM TOBACCO HOUSE
INCd/b/a AMSTERDAM TOBACCO
HOUSE, RAJESH SHAH, and
SALEEM K SUMNANI,

        Defendants.

_____/

## <u>COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES</u>

The Plaintiff, GS HOLISTIC, LLC (hereinafter referred to as "GS"), by and through its undersigned counsel, hereby files this, its Complaint against the Defendants, AMSTERDAM TOBACCO HOUSE INC d/b/a AMSTERDAM TOBACCO HOUSE, RAJESH SHAH, and SALEEM K SUMNANI (collectively, "OWNERS"), and alleges, as follows:

### <u>Jurisdictional Allegations</u>

1. This is a civil action against the Defendants for trademark infringement, counterfeiting, and false designation of origin and unfair competition, under the Lanham Act (15 U.S.C. § 1051 *et. seq.*).

2.     This Court has subject matter jurisdiction over the claims in this action that relate to trademark infringement, counterfeiting, and false designation of origin and unfair competition pursuant to the provisions of 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

## Venue

3.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) in that the Defendants reside in this district, the cause of action occurred in this district, and a substantial part of the events or omissions giving rise to these claims occurred in this judicial district, and the Defendants have extensive contacts with this judicial district relating to GS' claims.  The Defendants conduct regular and systematic business transactions in this judicial district, including direct sales to consumers in this judicial district, which violate the intellectual property rights of GS.

## Parties

4.     GS HOLISTIC, LLC is a Delaware Limited Liability Corporation that has its principal place of business at 7162 Beverly Boulevard, #207, Los Angeles, California 90036.  GS is the registered owner of the G PEN trademarks.

5.     AMSTERDAM TOBACCO HOUSE INC d/b/a AMSTERDAM TOBACCO HOUSE (hereinafter referred to as "AMSTERDAM TOBACCO HOUSE") is a corporation that was organized and existing under the laws of the State of New York  and has its principal place of business at 273 Amsterdam Ave ,

170 West 73rd St , New York, NY, 10023.  SALEEM K SUMNANI owns and operates the AMSTERDAM TOBACCO HOUSE at that location.  AMSTERDAM TOBACCO HOUSE is a citizen of New York.

6.    RAJESH SHAH is domiciled in and a resident of 18 Duke Dr Apt 20x, New Hyde Park, NY 11040 and is *sui juris*.  RAJESH SHAH is a citizen of New York, and regularly conducts and solicits business in the State of New York (including this Judicial District).  RAJESH SHAH is an owner of AMSTERDAM TOBACCO HOUSE INC d/b/a AMSTERDAM TOBACCO HOUSE.  RAJESH SHAHcontrols and directs the activities, including the infringing activities, of Defendant AMSTERDAM TOBACCO HOUSE INC d/b/a AMSTERDAM TOBACCO HOUSE.

7.    SALEEM K SUMNANI is domiciled in and a resident of 260 Center St, Williston Park, NY 11596 and is *sui juris*.  SALEEM K SUMNANI is a citizen of New York, and regularly conducts and solicits business in the State of New York (including this Judicial District).   SALEEM K SUMNANI is an owner of AMSTERDAM TOBACCO HOUSE INC d/b/a AMSTERDAM TOBACCO HOUSE. SALEEM K SUMNANI controls and directs the activities, including the infringing activities, of Defendant AMSTERDAM TOBACCO HOUSE INC d/b/a AMSTERDAM TOBACCO HOUSE.

## Facts Common to All Counts

**The History of The G PEN Brand.**

8.    Since 2012, GS has marketed and sold products using the well-known trademark "G Pen."  The G Pen branded products, such as portable vaporizers and accessories related thereto, are widely recognized nationally and internationally. Indeed, the G Pen brand is one of the leading companies in the industry, known for the high quality of the products at an achievable price point for all.

9.    For nearly ten years, GS has worked to distinguish the G Pen brand as the premier manufacturer of vaporizers by emphasizing the brand's unwavering use of quality materials and focusing on scientific principles which facilitate a superior smoking experience.  G Pen branded products embody a painstaking attention to detail, which is evident in many facets of authentic G Pen branded products.  It is precisely because of the unyielding quest for quality and unsurpassed innovation that G Pen branded products have a significant following and appreciation amongst consumers in the United States and internationally.

10.    As a result of the continuous and extensive use of the trademark "G PEN," Grenco Science was granted both valid and subsisting federal statutory and common law rights to the G Pen trademark.

11.    In 2016, Grenco Science assigned to GS all the rights associated with the G PEN trademark and other marks associated with the different products sold by

GS.  The assignment to GS was duly recorded with the United States Patent and Trademark Office on May 24, 2016.  True and correct copies of the assignment of these marks are attached hereto as Exhibit "A."

12.    GS is the rightful owner of United States trademarks, which are registered on the Principal Register and have become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065.  The following is a list of GS' federally registered trademarks:

      a.    U.S. Trademark Registration Number 4,390,645 for the standard character mark "G Pen" in association with goods further identified in registration in international class 010.

      b.    U.S. Trademark Registration Number 5,368,594 for the word mark "G Pen" and its logo in association with goods further identified in the registration in international class 010.

      c.    U.S. Trademark Registration Number 4,470,963 for the standard character mark "Grenco Science" in association with goods further identified in the registration in international class 010.

      d.    U.S. Trademark Registration Number 4,616,071 for the standard character mark "Grenco" in association with goods further identified in the registration in international class 010.

      e.    U.S. Trademark Registration Number 4,466,586 for the word mark "G" and its logo in association with goods further identified in the registration in international class 010.

      f.    U.S. Trademark Registration Number 5,405,360 for the word mark "G Grenco Science" and its logo in association with goods further

identified in the registration in international class 010.

g.      U.S. Trademark Registration Number 5,405,361 for the word mark "G Grenco Science" and its logo in association with goods further identified in the registration in international class 010.

13.    The above U.S. registrations are valid, subsisting and in full force and effect.  True and correct copies of the relevant Trademark Registrations are attached hereto and marked as Exhibit "B." Hereinafter, GS utilizes the phrase "G PEN Marks" to refer to, collectively, GS' relevant federally registered, above-listed trademarks.

## The G PEN Brand in the United States

14.    Pursuant to the trademark assignment between Grenco Science, Inc. and GS Holistic, LLC, GS has used the G Pen Marks in commerce throughout the United States, continuously, since 2016, in connection with the manufacturing of vaporizing products.

15.    The G Pen Marks are distinctive to both the consuming public and the Plaintiff's trade.  GS' G Pen branded products are made from superior materials. The superiority of G Pen branded products is not only readily apparent to consumers, but to industry professionals as well.

16.    GS' Trademarks are exclusive to GS and appear clearly on GS' Products, as well as on the packaging and advertisements related to such products. GS has expended substantial time, money, and other resources in developing,

advertising, and otherwise promoting and protecting GS' Trademarks. As a result, products bearing GS' Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from GS.

17.    GS' Products have become some of the most popular of their kind in the world and have also been the subject of extensive unsolicited publicity resulting from their high-quality and innovative designs. Because of these and other factors, the GS brand and GS' Trademarks are famous throughout the United States.

18.    Since 2016, GS has worked to build significant goodwill in the G Pen brand in the United States. GS has spent substantial time, money, and effort in developing consumer recognition and awareness of the G Pen brand, via point of purchase materials, displays, through their websites, attending industry trade shows, and through social media promotion.

19.    In fact, GS' Products have been praised and recognized by numerous online publications, as well as publications directed to the general public.

20.    Due to the high quality of the brand and products, GS has collaborated with numerous celebrities and companies to create collaborations.

21.    GS sells its products under the G Pen Marks to authorized stores in the United States, including in California. GS has approximately 5,000 authorized stores in the United States selling its products. As such, G Pen branded products

reach a vast array of consumers throughout the country.

22.    It is because of the recognized quality and innovation associated with the G Pen Marks that consumers are willing to pay higher prices for genuine G Pen branded products.  For example, a G Pen brand vaporizer ranges in price from $70 to $250, while a non-G Pen branded product of equivalent size and technology will usually sell from $11 to $20.

23.    It is exactly because of their higher sales value that G PEN branded products are targeted by counterfeiters.  The counterfeiters tarnish the G PEN brand by unlawfully selling vaporizers that have identical, or nearly identical, versions of the G PEN Marks affixed to products that are made with inferior or different materials, thereby leading to significant illegitimate profits by OWNERS, such as the Defendants in the instant case.

24.    In essence, the Defendants mislead consumers by selling in their stores low grade products that take a free ride on the goodwill of the G PEN brand, and in turn, the Defendants reap ill-begotten profits.  The Defendants' offering for sale of counterfeit G PEN products contributes to the complete flooding of the marketplace with G PEN counterfeit products, which results in lost sales and damages to GS and irreparable harm to the G PEN brand's image.

25.    The sale of the counterfeit products also cause harm to GS in that legitimate store owners will not purchase authentic G PEN vaporizers when stores

selling counterfeit products are selling products which appear to be identical and at half the price which authentic products can be sold.

26.    Unfortunately, the current U.S. marketplace is saturated with counterfeit G PEN products – just like those OWNERS, through their store, AMSTERDAM TOBACCO HOUSE, are offering for sale.  As such, GS has been forced to scrupulously enforce its rights in order to protect the G PEN Marks against infringement.  By exercising its Enforcement Rights, GS has proactively and successfully policed the unauthorized use of the G PEN Marks and/or counterfeit G PEN branded products nationwide.  GS has had to bear great expense to seek out and investigate suspected counterfeiters in GS' attempt to clean up the marketplace.

**Defendants' Counterfeiting and Infringing Activities**

27.    The Defendants operate a retail smoke shop through which they sell water pipes, cigarettes, electronic cigarettes, vaporizers, tobacco, and other smoking related devices.

28.    The Defendants have offered for sale counterfeit G PEN products with the G PEN trademark and without the consent of GS.  In fact, they have offered counterfeit vaporizers bearing imitations of the G PEN Trademarks that were not made or authorized by GS.  These are hereinafter the "Counterfeit Goods."

29.    Nevertheless, the Defendants have offered for sale in commerce the Counterfeit Goods, specifically, the Defendants have offered for sale reproductions,

9

counterfeits, copies and/or colorable imitations of one or more of the G PEN Marks (hereinafter the "Infringing Marks"), detailed above.

30.    The Defendants have, without the consent of GS, offered for sale in their store, the Counterfeit Goods bearing the Infringing Marks, bearing the likeness of the G PEN Trademarks in the United States.

31.    The marks affixed to the Counterfeit Goods that the Defendants have offered for sale are spurious marks which are identical with, or substantially indistinguishable from, the G PEN Trademarks. The marks on the Counterfeit Goods are in fact counterfeit marks as defined in 15 U.S.C. § 1116(d).

32.    Moreover, the products upon which the Counterfeit Marks are affixed are almost identical to authentic products, so the offering for sale of the almost identical products with indistinguishable marks causes confusion in the marketplace among consumers.

33.    In the ongoing investigation into the sales of counterfeit products bearing the fake G PEN Marks, AMSTERDAM TOBACCO HOUSE offered for sale Counterfeit Goods.

34.    Specifically, on December 16, 2023, GS' investigator attended AMSTERDAM TOBACCO HOUSE's location, which was open to the public, and observed that it had a at least four vaporizers which appeared to display each of the G PEN Marks.  The investigator purchased a vaporizer with G PEN Marks affixed

to it, from AMSTERDAM TOBACCO HOUSE, for a cost of $97.98, charged to the account of GS' investigator.  Upon physical inspection by GS' investigator, the product was found to be a counterfeit product in that it displayed the Infringing Marks.

35.    Attached hereto as Exhibit "B" are the photographic examples of the Defendants' use of the Infringing Marks, taken from the Counterfeit Good.  As seen in the pictures, the Counterfeit Good contained each of the seven aforementioned of GS' marks on it: U.S. Trademark Registration Number 4,390,645; U.S. Trademark Registration Number 5,368,594; U.S. Trademark Registration Number 4,470,963; U.S. Trademark Registration Number 4,616,071; U.S. Trademark Registration Number 4,466,586; U.S. Trademark Registration Number 5,405,360; U.S. Trademark Registration Number 5,405,361.

36.    The Defendants' use of the Counterfeit Marks is substantially indistinguishable, if not identical, to GS' Marks.

37.    OWNERS authorized, directed, and/or participated in AMSTERDAM TOBACCO HOUSE's offer for sale, in commerce, of the Counterfeit Goods. OWNERS acts were a moving, active, and conscious force behind AMSTERDAM TOBACCO HOUSE's infringement of the G PEN Trademarks.

38.    The Defendants' use of the counterfeit G PEN Trademarks began after the registration of the G PEN Trademarks.  Neither GS, nor any of its authorized

agents, have consented to the Defendants' use of the G PEN Trademarks, or any use of reproductions, counterfeits, copies and/or colorable imitations thereof.

39.     The unauthorized offering for sale by AMSTERDAM TOBACCO HOUSE, under the authority, direction and/or participation of OWNERS, of the Counterfeit Goods was an unlawful act in violation of the Lanham Act, 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a).

40.     The offer for sale by the Defendants of the Counterfeit Goods bearing the Infringing Marks has caused GS to suffer losses and is likely to cause damage to the goodwill and reputation associated with the G PEN Trademarks, which are owned by GS.

41.     AMSTERDAM TOBACCO HOUSE's use of the G PEN Marks includes displaying to offer for sale unauthorized copies of Counterfeit G PEN branded products.  AMSTERDAM TOBACCO HOUSE's offering to sell the G PEN counterfeit products, bearing the Infringing Marks in this manner, was, and is, likely to cause confusion or to cause mistake and/or deceive consumers who purchase the Counterfeit Goods.

42.     AMSTERDAM TOBACCO HOUSE used images and names identical to or confusingly similar to the G PEN Marks, to confuse customers and aid in the promotion and sales of Counterfeit Goods under the Infringing Marks.  The Infringing Marks affixed to the Counterfeit Goods that AMSTERDAM TOBACCO

HOUSE has offered for sale are confusingly identical or similar to the G PEN Marks that GS affixes to its vaporizers. The Counterfeit Goods and GS' goods are both vaporizers, and marks identical or confusingly similar to the G PEN marks appear on the Infringing Goods.

43.    The Defendants' Infringing Goods travel in identical channels of trade and are sold to identical consumers as G PEN genuine goods.

44.    The vaporizers that AMSTERDAM TOBACCO HOUSE sells and offers for sale under the Infringing Marks are made of substantially inferior and/or different materials as compared to genuine G PEN brand products.

45.    AMSTERDAM TOBACCO HOUSEhas offered for sale its water pipes under the Infringing Marks through its retail convenience store.

46.    AMSTERDAM TOBACCO HOUSE and OWNERS infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Counterfeit Goods sold by AMSTERDAM TOBACCO HOUSE, and are likely to deceive, and have deceived, the relevant consuming public into mistakenly believing that the Counterfeit Goods sold by AMSTERDAM TOBACCO HOUSE originate from, and are associated or affiliated with, or otherwise authorized by GS.

47.    AMSTERDAM TOBACCO HOUSE and OWNERS' acts are willful with the deliberate intent to trade on the goodwill of the G PEN Marks, cause

confusion and deception in the marketplace, and divert potential sales of the Plaintiff's vaporizers to AMSTERDAM TOBACCO HOUSE. The Defendants, as merchants of tobacco shop goods, are held to the standard of having specialized knowledge in the tobacco shop industry. It is readily apparent that the Defendants, as merchants, have failed to conduct any reasonable inquiry into the authenticity of the goods sold by their shop and have acted with at least willful blindness as to GS' intellectual property rights in the G PEN Marks.

48.    AMSTERDAM TOBACCO HOUSE and OWNERS acts have caused damage and immediate irreparable harm to GS, the G PEN Marks, and to its valuable reputation and goodwill with the consuming public for which GS has no adequate remedy at law.

49.    As a proximate result of the unfair advantage accruing to OWNERS and AMSTERDAM TOBACCO HOUSE's business from deceptively trading on GS' advertising, sales, and consumer recognition, OWNERS and AMSTERDAM TOBACCO HOUSE have made profits and gains to which they are not in law or equity entitled.

50.    The injuries and damages sustained by GS has been directly and proximately caused by AMSTERDAM TOBACCO HOUSE and OWNERS' offers for sale of their goods bearing infringements or counterfeits of the G PEN Marks.

51.    Through such business activities, OWNERS and AMSTERDAM

TOBACCO HOUSE purposefully derived direct benefits from their interstate commerce activities by targeting foreseeable purchasers in the State of New York, and in doing so, have knowingly harmed GS.

52.    Furthermore, the sale and distribution of Counterfeit Goods by AMSTERDAM TOBACCO HOUSE has infringed upon the above-identified federally registered trademarks.

53.    The spurious marks or designations used by AMSTERDAM TOBACCO HOUSE in interstate commerce are identical with, or substantially indistinguishable from, the G PEN Marks on goods covered by the G PEN Marks. Such use therefore creates a false affiliation between AMSTERDAM TOBACCO HOUSE, GS, and the G PEN Marks.

54.    Due to the actions of OWNERS and AMSTERDAM TOBACCO HOUSE, GS has been forced to retain the undersigned counsel and pay the costs of bringing an action forward.  OWNERS and AMSTERDAM TOBACCO HOUSE should be responsible for paying GS' reasonable costs of the action.

55.    OWNERS and AMSTERDAM TOBACCO HOUSE's acts have damaged, and will continue to damage GS, and GS has no adequate remedy at law.

56.    Moreover, AMSTERDAM TOBACCO HOUSE and OWNERS' wrongful acts will continue unless enjoined by the Court.  Accordingly, OWNERS and AMSTERDAM TOBACCO HOUSE must be restrained and enjoined from any

further counterfeiting or infringement of the G PEN Marks.

## Count One
## Federal Trademark Counterfeiting and Infringement, 15 U.S.C. § 1114

57.    The Plaintiff avers Paragraphs 1 through 56, which are stated above and incorporate the allegations therein, as though they are fully restated in this Count by reference.

58.    GS owns the federally registered G PEN Trademarks, as set forth in more detail in the foregoing paragraphs.

59.    The Defendants, without authorization from GS, have used in commerce a spurious designation that is identical with, or substantially indistinguishable from, the G PEN Trademarks on the same goods covered by the G PEN Trademarks.

60.    The Defendants' unauthorized use of counterfeit marks of the registered G PEN Trademarks on and in connection with the Defendants' offer for sale in commerce is likely to cause confusion or mistake in the minds of the public.

61.    The Defendants' conduct as alleged herein is willful and intended to cause confusion, mistake, or deception as to the affiliation, connection, or association of the Defendants, with GS or the G PEN Trademarks.

62.    The Defendants' acts constitute willful trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

63.    The Defendants' actions constitute the use by the Defendants of one or

more "counterfeit mark(s)" as defined in 15 U.S.C. § 1116(d)(1)(B).

64.    The Defendants' use in commerce of the counterfeit G PEN Trademarks has resulted in lost profits and business to GS, which are difficult to determine.  The Defendants have also, by selling counterfeit G PEN products, caused considerable damage to the goodwill of the G PEN Trademarks, and diminished the brand recognition of the G PEN Trademarks by introducing counterfeit products into the marketplace.

65.    By reason of the foregoing, the Plaintiff is entitled to, among other relief, injunctive relief, an award of statutory damages, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## Count Two
## Federal False Designation of Origin 15 U.S.C. § 1125(a)

66.    The Plaintiff avers Paragraphs 1 through 56, which are stated above and incorporate the allegations therein, as though they are fully restated and incorporated in this Count by reference.

67.    GS owns the federally registered G PEN Trademarks, as set forth in more detail in the foregoing paragraphs.

68.    The Defendants, without authorization from GS, have used in commerce spurious designations that are identical with, or substantially indistinguishable from, the G PEN Trademarks on the same goods covered by the G

PEN Trademarks.

69.    The Defendants' unauthorized use of counterfeit marks of the registered G PEN Trademarks on and in connection with the Defendants' offers for sale in commerce is likely to cause confusion or mistake in the minds of the public.

70.    The Defendants' unauthorized use in commerce of the G PEN Trademarks as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

71.    The Defendants' conduct as alleged herein is willful and is intended to, and is likely to, cause confusion, mistake, or deception as to the affiliation, connection, or association of the Defendants, with GS or the G PEN Trademarks.

72.    The Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to GS, and to the goodwill and reputation of the G PEN Trademarks.  Moreover, it will continue to cause damage to GS and confuse the public unless enjoined by this Court.

73.    GS has no adequate remedy at law.

74.    By reason of the foregoing, the Plaintiff is entitled to, among other relief, injunctive relief, an award of statutory damages, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, the Plaintiff, GS HOLISTIC, LLC, respectfully requests the following relief against the Defendants, as follows:

1.    With regard to Plaintiff's Count I for trademark infringement:

    a.  Statutory damages under 15 U.S.C. § 1117(c);

    b.  Costs of suit; and

    c.   Joint and several liability for SALEEM K SUMNANI, and other officers, and directors, for the knowing participation in the counterfeiting activities of AMSTERDAM TOBACCO HOUSE INC;

    d.  Award GS HOLISTIC LLC its reasonable attorneys' fees and costs.

2.    With regard to Plaintiff's Count II for false designation and unfair competition:

    a.  Disgorgement of profits under 15 U.S.C. § 1117(a);

    b.  Treble damages under 15 U.S.C. § 1117(b);

    c.  Costs of suit; and

    d.  Joint and several liability for D2 NAME, and other officers, and directors, for the knowing participation in the counterfeiting activities of AMSTERDAM TOBACCO HOUSE INC.

3.      Entry of an order requiring Defendants to pay prejudgment interest according to law.

4.      Preliminarily and permanently enjoining AMSTERDAM TOBACCO HOUSE INC and its agents, employees, officers, directors, owners, representatives, successor companies, related companies, and all persons acting in concert or participation with it from:

a.   The import, export, making, manufacture, reproduction, assembly, use, acquisition, purchase, offer, sale, transfer, brokerage, consignment, distribution, storage, shipment licensing, development, display, delivery, marketing, advertising or promotion of the counterfeit G PEN product identified in the Complaint and any other unauthorized G PEN product, counterfeit, copy or colorful imitation thereof;

5.      Pursuant to 15 U.S.C. § 1116(a), directing AMSTERDAM TOBACCO HOUSE INCto file with the Court and serve on the Plaintiff's within thirty (30) days after issuance of an injunction, a report in writing and under oath setting forth in detail the manner and form in which AMSTERDAM TOBACCO HOUSE INC has complied with the injunction;

6.      For an order from the Court requiring that the Defendants provide complete accountings and for equitable relief, including that the Defendants

disgorge and return or pay their ill-gotten gains obtained from the illegal transactions entered into and/or pay restitution, including the amount of monies that should have been paid if the Defendants had complied with their legal obligations, or as equity requires;

7.    For an order from the Court that an asset freeze or constructive trust be imposed on all monies and profits in the AMSTERDAM TOBACCO HOUSE INC's possession, which rightfully belong to the Plaintiff;

8.    Pursuant to 15 U.S.C. § 1118 requiring that the Defendants and all others acting under the Defendants' authority, at its cost, be required to deliver up to the Plaintiff for destruction all products, accessories, labels, signs, prints, packages, wrappers, receptacles, advertisements, and other material in their possession, custody or control bearing any of the G PEN Trademarks.

9.    For such further and other relief and this Honorable Court may deem just and equitable.

## **Demand for Jury Trial**

The Plaintiff demands a Jury Trial on all issues so triable.

Date: May 29, 2025

Respectfully submitted,

21

Anthony M. Verna III
Verna Law, P.C.
80 Theordore Fremd Ave.
Rye, NY 10580
Serv611@LegalBrains.com
Telephone: 561-232-2222
*Attorney for the Plaintiff*